Your Honor, thank you for the opportunity to appear. I would like to spend just a few minutes on my high horse soapbox to talk about the injustice of this case and then turn our attentions to questions from the bench because it's obvious that cases like this are routinely dismissed without oral argument so I'm assuming there was something here that caught the court's attention and they wanted to know more. I can only hope that the hard questions are for my friend and colleague Mr. Gilmer and I predict that he will spew the obligatory deference standards, the qualified immunity standards that are the kind of de rigueur, that's kind of where things have been headed lately in the courts, granting more and more deference and qualified immunity to government actors and this case is the because there's things about this case that are right and we can see there's things about it that are wrong and so I'm sorry I thought I heard somebody trying to ask me a question. There's not everybody that works at the prison systems and Eagle Scout who has sworn an oath to duty and loyalty and honor and at some level we want punks and bullies working in our prisons because they're more equipped to get the job done and in this case that's exactly what happened with the actions of Emling and Lorien. Their abuse of Ms. Cates who's a law abiding taxpaying citizen is different and it should be she should be treated different than how correctional officers are allowed to treat inmates, people who are under terms of conviction. Counsel, can I jump in and just ask you a question about one claim in particular? Certainly. The Fourth Amendment strip search claim and I just want, if you could, if you could clarify the basis for that claim. Is your concern that your client was not given the option to leave before? Absolutely. Yes, it's absolutely and under the Spear case that's the test, right? And I want it so, did that answer your question? Yeah, because your complaint didn't exactly plead it in those terms. It was, you had kind of a narrower focus and I wanted just to make sure that you are in fact, your contention is that the officers or the prison guards when they I guess announced or told your client, come with us, we're going to do the strip search. They never offered her the opportunity just to say, you know what, if that's the case, then I'm just going to go home. They didn't give her that opportunity. Is that the heart of the claim? It is and I think it's an undisputed fact because nowhere, I don't think at any point the defendants have said, well, yeah, we told her we can leave. They relied on the recording of a Gonzalez. They relied on a telephone call and they suggest that she quote unquote consented to the search based on her telephone call. But that's cherry picking because the other parts of the conversation where I'm going to do something about this, this isn't right. And that's what kind of differentiates Ms. Cates from all the other people that this happens to. And I can assure the court, if the court decides to let this slide, it's going to keep happening. It's happened before. I have an exactly similar case based on the same set of facts and circumstances where this exact same thing happened. I do practice in this area. These kind of actions by the corrections officers and especially the inspector, they happen. The question occurs to me that she signed a form when she comes in that consents to search. Why was that consent narrow such that the strip search was not part of what she consented to? Well, now what you're swerving us into is an interpretation of the consent form. What's included in that? That's my question. Right. And so the precise question is, why was that not sufficient to reform the strip search? Now we're getting into this contract theory. Ms. Cates applied for permission to enter the prison to visit, make a prison visit. That's an application much like applying for a driver's license. In doing so, she surrenders some of her Fourth Amendment rights, conceded. But in exchange, in her contract theory, she's entitled to compel the government, this prison, to comply with their own regulations. And their own regulations say you can't do a strip search without written consent. Also, there's a search warrant in the background. What's the relevance of that, if any? Zero. And we originally, and the district court relied on it heavily to establish reasonable suspicion or probable cause. But the point is, it's an undisputed fact that warrant was not executed. Now, the fact that Emling had it in his back pocket when he detained Ms. Cates goes more to his mental state. We're not really addressing that here. But our position is that warrant is irrelevant because it was not executed. This is a hypothetical question because I take your point that it was not executed. It wasn't presented to her. Did the warrant prevent the strip search? I don't know. I don't believe it did. I don't believe that the warrant included a strip search. But again, under that theory of her applying for a license to visit the prison, it was an agreement that she would surrender some of her Fourth Amendment rights, but they would also comply with the regulations. And they didn't. And the district court states that you have no constitutional right in the prison following the regulations. I want to also point out, I was really interested in the district court's analysis of Ms. Cates' liberty interest. The district court relied on the kind of the, you know, the wallpaper that says a prisoner has no right to prison visitation. Ms. Cates isn't a prisoner, right? And so that whole, everybody knows that prisoners don't have a right to visitation. Counsel, does your Fourth Amendment claim then depend on the if Nevada's regulations said you may be subject to search, including a strip search, in the judgment of the officers, do you have a Fourth Amendment claim? I was listening to the first part of the question, and so I missed the second half. I'm circling back to an answer that you gave either Judge Wofford or Judge Fletcher, where you said that the problem was, one of the problems was that they, that you said that she may compel the prison to follow its own regulations, compel them on penalty of a 1983 suit under the Fourth Amendment. Yeah, that's all we have, Your Honor, because... Okay, but so does the Fourth Amendment independently prohibit a strip search under these circumstances? Or does your Fourth Amendment argument depend on the regulations? I think it's both, because I don't think it's reasonable to strip search somebody. Okay, do you have a case, what's your best case on that one, on the strip search? Is it the Riley? I'm not sure, I'm drawing a blank, Your Honor. Okay, but if that's the case, Counsel, if that's your answer, then doesn't that, don't you lose on qualified immunity? If you can't cite us a case, then if the Fourth Amendment of its own, if your claim is the Fourth Amendment of its own weight bars the strip search, but you can't cite us a case, then aren't we the step two of the qualified immunity inquiry, and aren't you gonna lose on that point? I hope not, Your Honor, and I do believe that we presented case law that a strip search in and of itself is unreasonable, because I think if all you have is reasonable suspicion, all you get is a Terry stock, a pat down for officer safety, but something as intrusive as a strip search, and I do believe we provided case law, but I'm sorry, I'm drawing a blank here. Counsel, it's the Spear case that you mentioned earlier from the Sixth Circuit that I think does provide strong support for the Fourth Amendment claim you articulated at the outset. I think, though, I still think Judge Biden's question is the right one, which is even granting that there's the Spear case out there, that's obviously not a circuit, and we were not able to find any other circuit level authority that announced the same rule that the Spear case did, so if that's all we have, let's say in response to Judge Biden's question, you say, well, we've got the Spear case from the Sixth Circuit, is that enough to get over the qualified immunity hurdle? It has to be, otherwise this behavior is going to continue, right? I mean, that's the thing here. If your only argument is this behavior is going to continue, we can write an opinion that says this is illegal, and everybody knows from now on that this is illegal, and there's no qualified immunity from this time forward, so if the only argument you have is deterring this in the future, we can take care of that, and your client still loses. I've got a different question, though, and that is to say, the question of qualified immunity is, did the officers act reasonably with the belief that the behavior was permitted? Is it enough to get past qualified immunity to say that there's a Fourth Amendment violation, and the officers knew darn well they weren't supposed to do it because of the regulation, not necessarily because the Fourth Amendment. You did it for me, Your Honor. Eureka! That's exactly the point. But I'm worried about whether that's enough because they weren't supposed to do it, but they didn't necessarily know that it was a violation of the Fourth Amendment. All they knew is that they were forbidden by regulation from doing it. I'm sorry, Your Honor. I think you answered the question. I'm about out of time. I did want to, if I could move on, I would like to. Let's see. Why don't we hear from the other side, and you've got a good long time. Well, just one thing I wanted to bring up, and that was the termination of our visits. We think that's a serious due process. Go ahead, please, please, if you want to say that now. I just did. That's all. I'll bring it up on the next round. Well, let's hear from the other side, and then we'll then you've got. Good morning, Judge Fletcher, members of the panel. May it please the court, my name is Randall Gilmer, and I am representing the defendants, all of whom have been dismissed in this case. Defendants respectfully request that this court affirm the district court's grant of summary judgment in their favor for at least four separate and distinct reasons. First, the plaintiff provided both a written and verbal consent to search her person, vehicle, and phone before later revoking the consent only as to her phone. Second, there was reasonable suspicion to search plaintiff and her belongings. Indeed, plaintiff doesn't suggest that there wasn't reasonable suspicion as the district court pointed out in at page eight, which is also page eight in the excerpts of record. Third, a judge concluded there was probable cause to search plaintiff and her vehicle. There's a search warrant in this case, and yes, it was not executed, but the fact that it was not a probable cause by a state judge with regard to finding the search warrant had probable cause to provide a search. But isn't it custom on that point, isn't it customary then, if there is a search warrant, when the officer who's about to conduct the search says, here's a search warrant. I mean, if it's an unexecuted search warrant, I'm not sure that the document has any legal effect. Thank you, your honor. I believe that could possibly have some basis or merit if we're talking about wanting to use evidence that may have been seized pursuant to that search warrant in a criminal context. But the fact that there was a judge that found probable cause to search, I believe whether or not the search warrant was executed or not is irrelevant to that actual finding. It does nothing to change the fact that the judge found probable cause to search this on that point. Let me pursue that for a moment. Let's take this outside the prison context in which this actually exists and take this outside the context in which there was some form of consent. Let's say that the police have a search warrant. The search warrant, I will assume for purpose of the question, allows us a strip search. They come up to the person for whom they have the search warrant and they strip search the person. Is that an unreasonable seizure? Your honor, I apologize if this was asked in your question and if it was, I missed. Did the, was the person given consent for the strip search or not? No, the person did not give consent. There's a search warrant in the back pocket, never presented to the person who's subject to the search and the person has strip searched. So, what relevance, if any, is there of the fact that there's an unexecuted search warrant? Sure. Well, again, I think that for a criminal context, if they were to strip search the person under those entities and there's not a warrant that was executed, then you might have some issues with regard to suppression. But I believe that even under those circumstances, and I'm going a little off our field from my expertise here because I'm not a prosecutor, but I would think that there would be good faith exceptions to the extent that if a judge found probable cause, and I would, in that instance, I would, I would try to analogize that to if there perhaps be a search incident to an arrest or search, or like a automobile search, where you might have, you might need probable cause, even though you don't necessarily need a warrant. A search incident to arrest is of course, you don't get to do a strip search incident to an arrest. Certainly. Okay. And I'm sorry I interrupted you. That was your third point and there was a fourth. Yes. And the fourth point, Your Honor, is, I believe I was at the second point on reasonable, oh yes, I was third point probable cause. And then the fourth point, Your Honor, is, and as counsel for the other side indicated, I believe qualified immunity would apply in this case as well. Counsel, can I ask you then about the Speer case? Because it did strike me as being on point, at least for the fourth amendment claim that your opponent articulated this morning. So maybe can you, can you address that? Do you agree that if we were to follow Speer here, that she would have stated a viable claim? I recognize there's a separate qualified immunity question, but just with the merits first. Certainly. Thank you, Your Honor. I don't believe she would have set forth a viable claim because as I read her complaint, she suggests that she would need probable cause. And I believe Speer only holds that you need reasonable suspicion, which I believe five or six other circuits have also held in the context of strip searches. Let me be clear then on the aspect of Speer that I'm focused on is not the level of suspicion that the officers have. I'm willing to grant you that your clients had reasonable suspicion at least. But what Speer says as I read it, tell me if you disagree, is that in the prison, you know, when you're trying to get entry into a prison, the prison's authority to engage in any kind of a search is limited to protecting the institution from the importation of contraband and the like. And so if you are going to condition someone's entry on the performance of a strip search, that's okay if you have reasonable suspicion. But you must first tell the person, listen, in order to get entry, you're going to have to subject yourself to this. You are free, of course, to decline and then you can just leave. And as I understand your opponent, the argument here is that she was never given the option of leaving. They just essentially put hands on her, took her to another room and strip searched her without her consent. So even if they had reasonable suspicion, as I read Speer, there would be a Fourth Amendment violation. But is there something wrong in what I've just said? Certainly not. Thank you for that. Well, I believe, as you said, we have reasonable suspicion. I believe twofold. I know that here before this court, they are stating and trying to state it maybe a little bit below that the district court that she was never told she was free to leave. However, I think that if you, under Scott versus Harris, if you look, if you listen to the audio recording that happened pretty much contemporaneously with these events, when she was speaking to her boyfriend as to why she was not able to see that day. And exactly at the two minute and forty three second, forty five second mark, she said they asked to search me and to remove my tampon. And I let them because I didn't have any drugs on me. And plaintiff's counsel is correct that she does later on in that phone call say that that a lot of what occurred wasn't right. But it's clear from the conversation that she never says that she didn't feel as if she was free to leave. And the thing that she thought was right wasn't right was that they stopped her from seeing him because she didn't allow him to search her phone. Did your clients did your clients affirmatively tell her that she was free to leave if she did not want to be strict? Your honor, I don't believe the record is clear on that point. And I think that would be a disputed fact. So I mean, that's the critical fact for this Fourth Amendment claim is I read Spear. So that's why I guess I'm it seems to me you would lose on the merits here here because you don't have evidence, undisputed evidence that your clients did affirmatively tell her she was free to leave. And that is the critical of the Spear. Well, a couple of things, your honor. I think it's different because of a couple of things. One, we have the warrant. So if she were to to the extent that she wasn't free to leave, we have a warrant at that point in time that could have been executed if we didn't want it to go that far. With the warrant, did the warrant authorize a strict search of her? Thank you, your honor, on that point. And I was using that because I heard that question. The if you read the search warrant, which is that 328 or the affidavit for the search warrant, which was also signed by the judge, and that many parts of it is redacted. It clearly points out that the officer believes there's probable cause to believe that drugs and contraband might be hidden in or on Ms. Cates. And that was the purpose that the search warrant was signed. So I would submit that the search warrant did extend to a strict search of Ms. Cates. Do we have a copy of the search warrant? Yes, your honor. The affidavit begins at 328. I also pulled the warrant out here and I think it just fell on the floor. My question is not what does the affidavit say. My question is what does the warrant say? Yes, and we do have a copy of the warrant, your honor. And the warrant says to search her person and things for drugs. And I in prisons and the way that drugs as as mules are often used, they're often put on the person, which would require a strict search in order to find drugs out of person. The warrant is pretty general, counsel. Was that Judge Bybee? I'm sorry, I did not. The warrant is the warrant is pretty general. Description of person in place to be searched, a person named Tina Cates described as so and so. I mean, it doesn't say about, you know, on or in or anything like that. Yes, the warrant is. I will concede that the warrant is very general. But again, I think that when you read it in the context of the affidavit and the fact that the judge also reviewed the affidavit and signed it and in the affidavit, the officer that the warrant covers the strict. Counsel, do you, does the record reveal why the warrant wasn't executed? Defendant Emling in his interrogator or did send a return and said that it wasn't executed and that there was no evidence discovered. There's not anything specific defending Emling. And I believe one of us, either in his admissions or interrogatories indicates that he did not execute it because she consented. So therefore, and there was no evidence of contraband. Yeah, I mean, it certainly seems like, you know, belt and suspenders. If you've got if you've got a warrant sitting in your back pocket, I mean, that just seems like like easy insurance. Now, the one thing that occurs to me is if he didn't have to use the warrant, he doesn't he doesn't have to alert her to the possibility that somebody that somebody has contacted them. She's not going to be able to figure out about but, you know, she may she may be able to figure out that somebody's been talking to the police and tip them off about her. And that's to the police advantage. But if they don't use the warrant, I don't see why they get to they get to hide behind anything that's in there. Well, on that point, despite what's written in the pleadings, I again would point the court to the audio recording, because in the audio recording, Miss Kate indicates to her boyfriend that she was told that they listened to our phone calls and thought we were bringing drugs in. So it's clear that she was told something by defendant Emily based upon her contemporaneous statements to her boyfriend when he when she was not able to see him. Yeah, but the warrant escalates it as Judge Vibey says, if she were presented with a warrant, I think she would be much more on her guard. I have a question, not just as to the fact of the script search, but as to the manner of the script search. She and I think for a very good reason found it degrading and offensive that she was she was menstruating, she was required to take out the tampon. She was not given a replacement tampon. She was told here's some tissue stuff and stick it down there. What possible justification is there for conducting the search in that manner? Thank you, Your Honor. And of course, you know, it's an extremely unfortunate situation that this occurred. And I do not want to take lightly the embarrassment or the degradation that Ms. Cates may have felt under those circumstances. And obviously, it's something that I myself would never face. So I don't want to take that lightly. But that being said, as this court is aware, hiding drugs on people. If a true script search and internal cavity search is permitted, that's an if, I don't say that it was, but if it's permitted, I understand requiring that the tampon be removed. What I do not understand is not giving a replacement tampon. I mean, this is barbaric treatment. Thank you, Your Honor. And to that end, there's no indication that says that we refused. I mean, it appears as if, in fact, under the record, that the officer who performed the script search tried to locate a tampon for her. That being said, again, not trying to take lightly of the situation. And obviously, hindsight being 20-20, we wish that would not have occurred and would have had a replacement tampon. What is the hindsight to object to this way of proceeding? Well, I think it's hindsight to the extent that if the officer honestly believed when she said, I have a tampon and I'm going to give it to you, then she did not have a reason to believe that she wasn't going to be able to provide her with a replacement tampon. But also, with regard to the, and as we talked about briefly under the qualified immunity portion, when we talk about qualified immunity, while we can certainly say that this is not the way we wish things would have gone down, the question is, is there any case law that says not providing a replacement tampon is a violation of somebody's constitutional rights under this? Sometimes you don't need case law to show that something is outrageous. And it may be there's no case law because ordinarily prison officials, even though they do some bad things sometimes, there's no case law because, you know what, this doesn't happen very often because an ordinary prison official acting in good faith and within the scope of his or her responsibilities would not do that. But it doesn't take a genius and it doesn't take case law to say that it's wrong and even outrageous. So, your honor, that's certainly true. And I mean, as lawyers and judges, we can pontificate about that, but we have, I think it's important that we look at it in the context of what the officers are faced with that day. They had a search warrant, they had phone calls that made them believe that there was going to be found during a search. And by all accounts, the officer believed she had a tampon because she said, please go get me a tampon. So, and that's not undisputed. Ms. Gates admits that the officer said, I'll give you a replacement tampon. There's no indication that she was lying or making that up. I mean, I believe it's important that we have to look at the context. I'm sorry, your honor. I'm sorry, you can't hear me interrupt. Did the officer in fact get her a replacement tampon? She did not, because apparently there was not one to give, but she had indicated prior to that she would give her one. Yeah. So, officer, yeah, we're not in any mistake. I'm sorry, your honor, you were breaking up. So, I wasn't sure if that was a comment or a question. Whether or not she was given a replacement tampon. She was not. That's correct. She was not. I see my time is up. If I could just have 10 seconds briefly also to point out that under administrative regulation 422, if there is reasonable suspicion, which I would submit there was here based upon the warrant. So, regardless of if the warrant was executed or not, under AR 422, the procedures for the strip search are different as opposed to a consent. Also, 422 talks about a consent to form search for the strip search, which I would submit was the form that was signed here. Thank you, your honors. If there's no other questions, I see my time has expired. Okay. Thank you very much. May I proceed? Please, go ahead. So, Judge Fletcher, you understand the chain of authority and how that all works. And in this situation, if senior officials say nothing about an incident like this, then the lower officers are going to continue to proceed in the same manner. They haven't had any pushback. And I think everything about this case is an indicia of the impunity in which these prison officials conducted this whole operation. There was no dispute. She was detained. She felt she was detained. Their reliance on the recording of a phone call suggesting consent, I think, is absurd. I think it's also curious that my colleagues tried to invoke the power and authority of the ARs in his closing, which was our point exactly that Ms. Cates is entitled to the protection of those ARs and that she was denied. I think that the court brought up very interestingly that there is no case law on this because there aren't very many Tina Cates out there. Right? Not very many people that go to the prison to visit family members have access to justice. Tina Cates is a little different. She's a taxpaying citizen, a solid citizen. This happened to her and she's outraged. And that's how she ended up in our lab. And so that's why there is no case law. But there needs to be because otherwise this is going to continue. It has it has a history of happening. This kind of impunity, this kind of bullying, this kind of punks. They treat people horrible. Ms. Cates is a citizen. She's not in prison. Right? I think the confusion, I'm just trying to wrap up, but I'd really rather hear from you. The court and the council continually flop back and forth between reasonable suspicion and probable cause. And as the court has said, there was no warrant. It's irrelevant. At most, there was reasonable suspicion. And in that case, it entitles you to something Terry Frist. And they went well beyond that with the unconsented strip search. I am out of gas unless you have a question. Any further questions from the bench? Your Honor, I'm sure I'll think of something five minutes from now when I get down in the parking lot and I'll kick myself and say I should have said it. Listen, every lawyer in the world has what they call staircase arguments. The arguments you thought of when you walk down the stairs and I'm sure you're no different. Thank both sides for their helpful arguments in this case. This is now a decision. Thank you, Your Honor. At this point, let's take a five minute break and then we will resume with the final two cases.
judges: W.fletcher, Bybee, Watford